Ladies and gentlemen, we have six cases on our calendar this morning. PTO appeal, two district court patent cases, two veterans cases, and an employee appeal. The employee case and one of the veterans cases that submitted an abbreviation will not be argued. Our first case this morning is from the PTO, Ray Abbott, Diabetes Care, 2011-15-16. Good morning, your honor. May it please the court. This appeal presents three issues. The parties are in agreement on the third one, which is the need for remand on the official notice issue. I plan to address these two issues in order. First, there is the question of whether the censors of the Abbott invention may reasonably include external cables or wires. Second, there is the question of whether the claim term, substantially fixed, can possibly be understood, can reasonably be understood, I should say, as somewhat restrained, so that the flexible external cable of the Shichiri risk watch unit meets that claim limitation. We think the answer to that question is clear. A substantially fixed censor is held as firmly in place as possible, not just somewhat held in place. But let me start with the question of whether the censor of the Abbott inventions of these two patents can contain external connecting cables and wires. Let me ask you, I always wonder about this when we have board case, PTO cases, which is, why didn't your client just amend the claim to explicitly exclude wires and cables and end all of this? Well, Judge Prost, I think the fact of the matter is that this re-examination, like so many re-examinations, was part of a series of re-examinations initiated against a defendant in patent litigation. Any amendment inevitably delays the process further, and quite candidly, we thought that the claim language, as well as the specification, was already clear. And so we have taken this up through the board process and to this court now, so that we can hopefully have this resolved and get to the business of the litigation that's been on hold for about six years now. Speaking of getting this resolved, if in fact we were to agree with you on the construction, on what is the broadest reasonable construction, don't we still need to remand it to the board to do then an obviousness analysis based on that new construction? I don't think we have any objection to having it remanded to the board, so I think the answer will be inevitable when it goes back down to the board, because the patentability of this invention in the first instance, I think, was because of the making of a small, discrete sensor that was not going to impede basic human activities. So if that indeed does happen, we'll certainly do our level best to move this as fast as possible through the PTO, because as I'm sure the court appreciates, our patent life is fairly limited here at this point. What the board here did, Judge Crouch, to your point, is it took a disparagement of the prior art, out of the background of the invention portion of these patents, and said this really tells us that sensors include cables and wires. Well, that's not what the background of the invention said. The background of the invention said the prior art devices have external cables and wires that hinder the convenient use of these devices for everyday application. So in a way, the board actually turned the specification on its head, and made into a definition that which was not within the scope of the claim. But given the language and what you didn't say, in the broadest reasonable interpretation, isn't it possible that it contains cables and wires? No, it's not possible, Judge Wallach, and here's why. If you look at the language of the claims, and particularly the way the claims describe the connectivity between the sensor and the sensor control unit, it talks about contact pads, it talks about coupling, it talks about those contact pads coming into connection with conductive contacts on the sensor unit. Between that, the disparagements, all of the embodiments being perfectly clear, and to some extent, Judge Wallach, I think there's a case here, to use a term that judges are fond of, of the dog that did not bark. And here we have an electrical invention. Which dog, which judge likes that expression? Well, certainly, I have no idea. The Supreme Court certainly likes it. But my point is this. We have an electrical invention. You would expect, or one would reasonably expect, that if cables and wires, which, by the way, were all over the prior art, see the first part of the specification describing the inadequacies of the prior art, one would think that if there was wire to be within the scope of this invention, you'd see it fairly prominently displayed throughout the specifications here. Here, you not only don't see that, but what you see described in the specifications are direct-type, wire-free contacts. And so, coming back to the broadest reasonable construction, it's not to say that that gives the board license to adopt any construction. Certainly, In re Sukho and In re Baker-Hughes are cases where this court found error and found that the construction, while broad, was not reasonable. That's what we've got here. What I'd like to do is comment on this issue just a little bit about the case law and the different case law that we rely on versus what the director relies on, which I think will help the court understand why this case has to be reversed on the claim construction and sent back. We've relied on cases like Symet, Irdeno Access, Wang, 3M, and OI Corporation. What those cases stand for, broadly speaking, is the proposition that where the claims may or may not... Here, let's say that the claims arguably don't say there has to be a direct wire-free connection of the contact pads and the connective contacts. But where you go into the specification and you see... Do you lose if we accept the Patent Office's claim construction? If you accept the Patent Office's claim construction with respect to sensor. I'm not sure that we've offered an argument here that you include wires. I'm not sure we've offered an argument here that you should reverse in the presence of those cables and wires. So I'm afraid we would, and that's exactly, of course, why we're here. But if I could just turn back to the case law for a moment, because I think this court not only has to decide this case, but to write an opinion that makes some sense. And if you take those cases that we've relied on... Like most of our opinions. Your Honor, all of your opinions. Simon, Erdedo, Wang, 3M, OI, all of these stand for the proposition that when all of the textual evidence is pointing to one indicator of meaning. You've got the abstract, the specification, and there's no contrary pointing. That's when you adopt a narrow construction, whether it's... And here, I think we have an anchor in the claim language itself. When you see what the board and the director have argued against us, they've argued cases like Martek, they've argued cases like Epistar, American Academy, and Bentana. And these stand for the fairly unexceptional proposition that when there's one isolated, equivocal, or perhaps inconsistent reference in the specification, that doesn't mean that you adopt a narrowing construction just because of that. So I think you can make sense of all of these cases in the same way that Judge Bryson for the court made sense of a lot of the prescient cases. But it's a little cleaner with the wires and the cables. When you get to substantially fixed, it's just a kind of subtle matter of degree. And that's a harder question, is it not? I'm sorry, the point is that the substantially fixed is a harder question than the... Well, how the board construes substantially fixed. It's a matter of degree where you get from some movement to somewhat restrained in movement. It's really a subtle matter of degree. Well, I don't think it's that subtle, Judge Probst, with all respect. Substantially means mostly. That's what it means in the context of these claims. That's what it ordinarily means with dictionary definitions. And it's certainly what it means when you look to the specification support for this amendment to the claim. If you look to column 32, the sensor control unit is described as holding the sensor in place. Now, what happened in the board's decision, as we've argued in our brief, is that the board went from substantially fixed and the understanding that we share, which is mostly fixed, the only degree of movement is that, which is sort of natural human skin, sort of twisting of the skin movement, and said that the Shichiri unit, which was a wristwatch unit that had an external cable that linked into a sensor which went under the skin, which if I moved my arm and caught it on a doorknob or the edge of a table would rip it out of the skin, that degree of play, and the board didn't even say that was substantially fixed. The board said that was somewhat restrained. Those are contrary expressions, aren't they? I think they're absolutely contrary expressions, Judge Lurie. I think, in fact, again, apparently, despite not being a dog owner, I'm very fond of dog metaphors this morning. If you think about a dog in a crate, that dog is substantially fixed in place. There's a very limited amount of movement, whereas a dog that's somewhat restrained could be a dog that's on a chain attached to a tree, and that's not unlike the Shichiri unit where you have a cable which is sort of like that chain. It's somewhat restrained. I think we'd have to agree that that's somewhat restrained, but it's not substantially fixed, and it's not substantially fixed by the sensor unit holding it in place. And when you consider also that the claim language there describing the connection in the 509 patent is received by, when you read received by in conjunction with all the references to contacts and contact paths and coupling that is in the patent, what you should anyway clearly be seeing is a sensor unit which is holding the sensor into the skin so that it doesn't pull out. You don't have those interferences with basic human movements. I think, unless the court has further questions, I would reserve the remainder of my time for rebuttal, but I don't want to sit down prematurely if the court has more questions for me. It is not premature. All right. Thank you, Your Honor. We'll save it. Mr. Johnson. May it please the Court. The Board reasonably construed the term sensor as it's broadly recited in the claim. If you look at the claim language, which is in the inside cover of our red brief, you'll see there that the term sensor is not restricted in any way. It does not. It is not limited. It says electrochemical though. It does, Your Honor. And in the specification, every embodiment is free of wires and cables, and the specification explicitly disparages the use of wires and cables in the sensor. So why is it reasonable? I'm not getting why it's reasonable for the Board to have construed it as including wires and cables. Well, for a couple of reasons, Your Honor. First, when you look at the claim language itself, it's written very broadly. It does not exclude cables and wires. If Abbott intended for the sensor to exclude cables and wires, it could have said so expressly by a flexible, transcutaneous electrical sensor not having cables and wires. That's true. I'm sorry. When they talk about the on-skin sensor control unit, they say it usually includes no additional cables. So they're capable of saying one or the other, but when they wanted to say that there was something involving a cable, they said it. Yes, Your Honor, that's correct. The fact that they did disclaim cables and wires with respect to the sensor control unit shows that they know how to disclaim certain terms. But it also shows that they know how to say, if we might ever have a cable or a wire, we're going to say, well, usually not, but it's possible that they don't in the other instance. That's completely correct, and we think that that is their problem. When you look at the background information that does— No, but to Judge Wallach's point, isn't that right? I mean, that's the way we construe statutes or whatever, when they indicate that if something is the case, they dealt with it explicitly. Why doesn't that sort of lean us towards construing this as lacking cables and wires? Sure, because they actually defined the term sensor in their specification, and they did so broadly. They defined it as a device that's used to detect and or measure glucose levels. They did not define it in such a way that excludes cables and wires. Or includes either. And the purpose of the specification is to describe one's invention. That's true, and they are supposed to describe their invention clearly, and they did not clearly disavow cables and wires in their definition. They did, Judge Prost indicated in the background section, that sensors can include cables and wires, and it's undisputed that that is the ordinary meaning of sensors, that they include cables— But this is an electrochemical sensor. Yes, but it's not disputed that that definition, that the term sensor, as used in the background section, also is the definition for their claimed electrical sensor. They did not dispute that before the board, when the board found that the definition for the ordinary meaning for the term sensor is that it includes cables and wires. And so, one of ordinary skill in the art, seeing the background section that says sensors includes cables and wires, that the board found, would understand that term to mean that sensors can include cables and wires. And because that ordinary meaning is found in their specification, this court's case law says that if they are going to deviate from the ordinary meaning, then they must do so clearly. Do your nerve cells have electrochemical sensors in them? I'm not quite sure, Your Honor. All right, that's who you occurred for. Okay. But it doesn't have wires. It does not have wires. That's correct, Your Honor. It's really electrochemical. Gotcha. Okay. Yes, Your Honor. And they did not hear disclaiming cables and wires in their specification at all. And this was a re-examination. And the whole purpose of the broadest reasonable interpretation in a re-examination is to allow the patentee to clarify his claims. How? By amending those claims. And they had the opportunity to do so, but they didn't do so here. They amended their claims in various ways, but they didn't amend their sensor term for clarity purposes. And they say that because of the disparaging remarks with respect to the sensor, that it hinders the movements of the patient, that that was some form of disavowal. Well, I have two responses for that. The first is a factual one. Well, they're correct that their background section does say that sensors hinder the convenient movement of the patient. But the background section also says that there are bulky devices that were present at that particular time. And there were certain devices that had sensor systems that had long cables that connected the sensor to these huge bulky sensor control units that had cables connected to large analyzers. Do we have to find the word disavow in the specification before we conclude that something that isn't in the spec isn't in the claim? Or do we look at the whole spec to really see what the claims are intended to describe? You look at the whole spec. You don't have to use the word. In other words, the word disavowal isn't a magic word. It's not. I was just about to say that. Disavowal is not a magic word. And as this court said in American Academy of Science, you are to look at the whole specification. And there in that case, which was a reexamination case, the board construed the term user computer very broadly to include mainframe computers. And American Academy, they disagreed with that board interpretation. They thought that the disparaging remarks in the background section in some way limited the term user computer. This court disagreed. It found that the general problems that were disparaging remarks in the background section wasn't sufficient to disavow the mainframe computers. My problem has taken on the thing as a whole, the word reasonable. And your opposing counsel kept emphasizing that word. Because when you read what they describe as the problem they're trying to resolve, and then you read the specification, how do you come up with the idea that it does include cables? What you're saying in effect is, well, they didn't say no. Your Honor, if you turn to 805, you'll see that Shoshari already solved the problem that was discussed in the background section. There you'll find figure one where Shoshari saw the prior art. It saw that there were these long cables connected to these big bulky devices. And so what it did was it developed a sensor control unit that was small enough that could fit right inside of a watch housing. And the way that Shoshari works is that you strap the watch onto your wrist that has the sensor control unit. You insert 13, which is the sensor, presumably right next to the watch housing itself. And then there's a signal that's sent from the sensor right to the sensor control unit. And then the glucose level is shown there in the display that's on the watch assembly itself. Is 13 a wire or does it lead to a wire? Yes, there are wires within 13, which is the sensor control unit. I'm sorry, which is the sensor. You see the wires in figure three there. 44 and 43 are the two disputed wires. Shoshari certainly doesn't look like the claimed invention. Well, it might not look like it, Your Honor, but it definitely teaches the claimed invention. Posing Council has characterized Shoshari as external cables. But when you look at figure three there, you see that 43 and 44 are connected within the cable, within the device there itself. It's not external to the cable, to the sensor at all. It's actually connected within figure three, which is the sensor. There are a number of cases that Posing Council raised. However, none of them dealt with, that he alleged to support his position, dealt with a reexamination. American Academy is the only case that deals with the reexamination. And as discussed, that actually supports our position. With respect to substantially fixed, what Abbott has argued is that the board in some way switched its definition. But the board didn't do that. The board in its original decision stated that the term substantially fixed means to allow for some movement of the sensor relative to the sensor control unit. In other words, that's defining something by its opposite. Well, it was a definition that Abbott agreed to, Your Honor. And when you look at figure one of... You mean they're challenging now what they agreed to earlier? Yes, Your Honor. What they're saying now is that in their decision on reconsideration, the board actually changed its definition. But the board didn't. Well, that depends on, that's comparing some movement to somewhat restraining movement. Is that what we're talking about here? Yes, Your Honor. And what the board said in its original decision is that the term substantially fixed allows for some movement. It confirmed that in its decision on reconsideration. It said once again that that particular term allows for some movement. And when you look at figure one of Shashari, you see there that when the sensor is actually inserted, that it is basically substantially fixed because the cables 43 and 44 are actually tethered to the watch assembly. And so whatever movement, whatever possible movement takes place, as the board said, would be due to the movement of the wrist. And whatever movement that is falls within the definition for substantially fixed. Even if this court were to accept Abbott's interpretation of the term sensor and find that the Shashari reference doesn't disclose that particular interpretation, well, there's still Lorde II. And the examiner found that it would have been obvious to combine Shashari with Lorde II to teach the claimed feature. And Lorde II does disclose the contact pads that Abbott has alleged is missing from Shashari. So this court can confirm the rejection even if it decides that Abbott's interpretation should be accepted. If there are no further questions. No? Thank you, Mr. Johnson. Mr. Stanius has a little rebuttal time. Thank you, Your Honor. I think the questions that the panel gave to my friend, Mr. Johnson, largely make the points or emphasize the points that we made in our briefs in my opening statement here. I think the court's emphasis on the term electrochemical sensor is important because, as Judge Lurie, you pointed out, electrochemical connections may not be wired at all. And, in fact, it suggests that they're not wired at all. To your point, Judge Lurie, earlier to me, if we lose, if we don't get our claim construction, I just want to make sure that the court understood that I was not in any way giving up the official notice argument at the very least. We still have to have a remand as the directors agreed on that. With regard to the sensor connectivity issue, I'll rest on one simple proposition. It is not a reasonable construction of a patent claim to read that claim in a way that destroys its own advance. With respect to the substantially fixed issue, Mr. Johnson says that we said that some movement was allowed. Yes, that's exactly what we said. But that's exactly the opposite of some restraint, which, if you look at page 847 of the joint appendix, is what the board held and applied to the Shichiri wristwatch unit in order to conclude that that some restraint created by the wristwatch unit was enough to meet substantially fixed. Unless the court has further questions, thanks for your time. I'll give the last three minutes back to the court. Thank you, Mr. Stanius. We'll accept. Please be taken under advisory.